UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| YURY IGOVERICH MOSHA,<br><br>Petitioner,<br><br>v.<br><br>BRIAN ENGLISH, SAMUEL OLSON, TODD LYONS, MARKWAYNE MULLIN, PAMELA BONDI, and DAREN MARGOLIN,<br><br>Respondents. | CAUSE NO. 3:26cv437 DRL-SJF |

OPINION AND ORDER

Immigration detainee Yuri Igoverich Mosha, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully confined in violation of the laws or Constitution of the United States.

Mr. Mosha was born in Russia and admitted into the United States in 2011 on a B-2 visitor visa [1-2]. In August 2018, he was granted conditional lawful permanent resident status and two years later filed a petition to remove conditions on his resident status. On January 12, 2024, he began serving a ten-month prison sentence after pleading guilty in federal court to conspiring to commit immigration fraud [1-1]. He also served a concurrent nine-month sentence after pleading guilty in state court to identity theft. On July 23, 2024, he was served with a notice to appear to initiate removal proceedings [11-2]. On August 22, 2024, he was transferred into United States Immigration and Customs Enforcement (ICE) custody. About two weeks later, an immigration judge held a custody redetermination

hearing and concluded that Mr. Mosha was subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(C) and thus was statutorily ineligible for bond because he was convicted of two crimes involving moral turpitude [1-3]. The immigration judge alternatively found that Mr. Mosha had not met his burden to demonstrate he did not pose a danger to the community.

The next day, Mr. Mosha submitted a new application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). On November 4, 2024, an immigration judge held a merits hearing and denied Mr. Mosha's application. Mr. Mosha appealed to the Board of Immigration Appeals (BIA). On April 28, 2025, the BIA affirmed the denial of asylum and withholding of removal but remanded the proceedings because the immigration judge's decision neglected to set forth sufficient factual findings and failed to comply with Third Circuit and BIA precedent with respect to deferral under CAT [1-4].

On remand from the BIA, Mr. Mosha retained new counsel and moved to submit an "application for cancellation of removal for certain permanent residents," which an immigration judge reportedly denied [1-1]. On September 23, 2025, an immigration judge issued a decision that denied consideration of Mr. Mosha's application for cancellation of removal and his deferral under CAT (the order says nothing about cancellation, but the immigration judge apparently ruled orally at the hearing on that) [1-1; 11-3]. On October 22, 2025, Mr. Mosha appealed that decision to the BIA. That appeal still pends.

Mr. Mosha is detained at Miami Correctional Facility. In his petition, he urges that mandatory detention under 8 U.S.C. § 1226(c), which requires him to be detained throughout his removal proceedings without the possibility of bond, became unconstitutional as applied to him due to the prolonged nature of his detention. He seeks

his immediate release or a bond hearing (a bond hearing in federal court) where the burden is placed on the government to show he poses a flight risk or danger to the community.

Mr. Mosha asks the court to balance the factors in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), to determine whether his continued detention under § 1226(c) has become unconstitutionally prolonged—namely, his private interest, the risk of error (and the effect of additional safeguards on that risk), and the government's interest in dispensing with these safeguards. He alternatively argues that he is entitled to habeas relief under the standard set out in *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3rd Cir. 2020), which suggests that a court might consider whether detention is likely to continue, the reasons for the delay, and the extent to which the conditions of confinement are similar to criminal punishment. He says detention has become unconstitutionally prolonged because he has been detained for just over 24 months; his detention will likely to continue due to the BIA's growing case load; the government is responsible for some delay in the proceedings because one immigration judge failed to make necessary findings resulting in a remand by the BIA; and the conditions of his confinement at MCF are indistinguishable from criminal punishment and are resulting in the denial of adequate mental health and medical care.

Congress enacted § 1226(c) "against a backdrop of wholesale failure by the INS to deal with increasing rates of criminal activity by aliens," with "one of the major causes of the INS's failure to remove deportable criminal aliens [being] the agency's failure to detain those aliens during their deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 518-19 (2003). It mandates detention for certain classes of noncitizens who commit serious crime or

terrorist activities, as examples. 8 U.S.C. § 1226(c)(1). With only a narrow avenue for release spelled out, *see* 8 U.S.C. § 1226(c)(4), "the statute expressly and unequivocally imposes an affirmation prohibition on releasing detained aliens under any other conditions." *Jennings v. Rodriguez*, 583 U.S. 281, 304 (2018).

The mandatory detention provision in § 1226(c) is constitutional on its face. "Detention during removal proceedings [under § 1226(c)] is a constitutionally permissible part of that process." *Demore*, 538 U.S. at 531; *see also Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) ("Given the sweeping powers Congress possesses to prescribe the treatment of aliens, the constitutionality of § 1226(c) is ordained.") (citation omitted). Recognizing that roadblock, today's petition instead presents an as-applied challenge in which this petitioner's particular circumstances drive the analysis—whether, despite this statutory mandate, his detention has become unconstitutionally prolonged. *See United States v. Seiwert*, 152 F.4th 854, 872 (7th Cir. 2025) ("for an as-applied challenge, a court must examine the facts before it, not any set of hypothetical facts") (citation and quotations omitted).

The United States Supreme Court has not reached this option of an as-applied constitutional challenge to prolonged detention under § 1226(c). *See Jennings*, 583 U.S. at 312.[1] Our high court has held that § 1226(c) "does not on its face limit the length of [] detention," though it has done so as a matter of statutory interpretation rather than constitutional blessing. *Id.* at 303. In this vein, § 1226(c) serves as an express exception to

---

[1] A case in which a writ of certiorari was granted on the issue of mandatory detention under § 1226(c) was recently dismissed as moot. *See Genalo v. Black*, 225 L.Ed.2d 1258 (2026); *Genalo v. Black*, 146 S. Ct. 2733 (2026).

§ 1226(a)—the latter distinguishing between the Attorney General's power to "continue to detain the arrested alien" and the power to "release the alien on . . . bond," and the former carving out a precise mandate that the Attorney General "shall" detain an alien with certain criminal records (like that of Mr. Mosha under § 1226(c)(1)(C)). A noncitizen "who falls into one of [several] enumerated categories involving criminal offenses and terrorist activities" must be detained "pending removal proceedings" and is "not entitled to be released under any circumstances other than those expressly recognized by statute." *Jennings*, 583 U.S. at 303. Nothing in the statute provides additional procedural protections that go beyond what has become known as a *Joseph* hearing (more on that soon). *Id.* at 306, 311. Notwithstanding this express statutory mandate, *Jennings* reserved the question of whether an as-applied constitutional challenge might conceivably be mounted. *Id.* at 312.

Our circuit has rejected an as-applied challenge in a situation in which a detainee conceded his removability, *see Parra*, 172 F.3d at 958, and left open the possibility of an as-applied challenge as to "whether mandatory detention under § 1226(c) is consistent with due process when a detainee makes a colorable claim that he is not in fact deportable," *Gonzalez v. O'Connell*, 355 F.3d 1010, 1019-20 (7th Cir. 2004) (*citing Demore*, 538 U.S. at 560 (Souter, J., dissenting)). To emphasize, the court of appeals reserved this prospect only in the situation when a petitioner presented a "good-faith argument" that he was not removable, not merely that he advanced any old argument, no matter how farfetched or even hopeful. *Id.* at 1020. Indeed, *Gonzalez* reached the very conclusion that the petitioner

there had not presented a good-faith argument against his removability such that he could not even get to a constitutional concern. *Id.* at 1019-21.[2]

Query whether Mr. Mosha has such a good-faith argument against his removability even to get to his constitutional concern. *See id.* This isn't a point of administrative exhaustion, because the government has not argued it, *see Jones v. Bock*, 549 U.S. 199, 216 (2007); *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015); *see also Margolin v. Nat'l Ass'n of Immigr. Judges*, 608 U.S. 339, 342 (2026) (party presentation rule), but a principle of constitutional avoidance in which the court must consider nonconstitutional grounds for decision before reaching any constitutional one, *see Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); *Ameritech Corp. v. McCann*, 403 F.3d 908, 911 (7th Cir. 2005); *see also Neese v. Southern R. Co.*, 350 U.S. 77, 78 (1955).

"Persons subject to § 1226(c) have forfeited any legal entitlement to remain in the United States and have little hope of clemency." *Parra*, 172 F.3d at 958. Both in his

---

[2] Other circuits that have reached the due process question have split on the issue—some adhering to the express language of § 1226(c) and the fact that this type of detention has a definite endpoint to reject a due process challenge, *see Banyee v. Garland*, 115 F.4th 928, 931-33 (8th Cir. 2024); *Wekesa v. United States Atty.*, 2022 U.S. App. LEXIS 32359, 1-2 (5th Cir. Nov. 22, 2022); *see also Demore*, 538 U.S. at 517-18 (recognizing "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings"), and others applying *Mathews*, or creating from whole cloth multifactor tests (along with some district courts) to counter so-called prolonged detention, even at times imposing a clear and convincing burden on the government to show a reason for detention, *see, e.g., Black v. Decker*, 103 F.4th 133, 148-58 (2d Cir. 2024), *cert. granted*, *Genalo v. Black*, 146 S. Ct. 2733 (2026), *cert. dismissed as moot*, *Genalo v. Black*, 225 L.Ed.2d 1258 (2026); *German Santos*, 965 F.3d at 210-12; *see also Baez-Sanchez v. Kolitwenzew*, 360 F. Supp. 3d 808, 815 (C.D. Ill. 2018) ("Since *Jennings*, district courts across the country have continued to find prolonged detention [under § 1226(c)] unconstitutional when considering case-specific factors, including the length of the detention, the cause of the delay and whether the petitioner appears to be 'gaming the system,' and the likelihood of eventual removal."). It seems an open question elsewhere. *See, e.g., Reid v. Donelan*, 17 F.4th 1, 7-9 (1st Cir. 2021) (adhering to idea that due process imposes some form of "reasonableness" limitation on § 1226(c) detention but declining to establish an analysis and rejecting idea of six-month bond hearings).

administrative process and now here in his habeas petition, Mr. Mosha seems effectively to concede that he committed a serious crime—one that would mandate his detention and one that would forfeit his right to stay in the United States. Life may be full of surprises, but his hope seems to be dwindling. He lost his request and his appeal for asylum. He lost his request and his appeal before the BIA to withhold removal.[3] Being convicted of a serious crime may do that. He ostensibly never appealed these two decisions any further. A withholding of removal would have been "country specific" relief anyway—in other words, he could not have been removed to Russia—but nothing would prevent the government from removing him elsewhere. *Johnson v. Guzman Chavez*, 594 U.S. 523, 531-32 (2021); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.6 (1987). And that would be true too even if he prevailed before the BIA on his CAT deferral, a request rejected by an immigration judge (even after a second go at it). *Johnson*, 594 U.S. at 531-32. If this were the sum of his administrative arguments, he could not fit his case within the cracked window that *Gonzalez* and *Parra* left open. There is no meaningful difference between a petitioner who lacks a legitimate argument against removability and one who concedes it, for both by law cannot remain in the United States. *Gonzalez*, 355 F.3d at 1020; *Parra*, 172 F.3d at 958.

But the court sees something else in the administrative record. Just last year, on June 20, after the BIA's ruling, Mr. Mosha tried another approach. After obtaining new counsel, he applied for "cancellation of removal for certain permanent residents" (Form EOIR-42A). This form of discretionary relief from removal is available to a non-citizen in active removal

---

[3] The parties have not argued that a removal order has become final, either before or as a result of the split decision by the BIA.

proceedings who has been lawfully admitted for permanent residence for at least five years, who has resided continuously for seven years in the United States, and who has not been convicted of an aggravated felony. *See* 8 U.S.C. § 1229b(a); *see also Perez-Perez v. Wilkinson*, 988 F.3d 371, 373 (7th Cir. 2021) (calling cancellation a discretionary decision). The immigration judge denied his motion to hear the request for cancellation of removal, along with CAT deferral. Mr. Mosha appealed both decisions to the BIA. This is what now pends.

Though Mr. Mosha doesn't contest that his criminal record qualifies him for detention under § 1226(c), so long as his appeal challenging the denial of his application to cancel removal is pending, the court cannot say he lacks a good-faith argument against his removal. *See Gonzalez*, 355 F.3d at 1020. There is just a dearth of record evidence as to whether he qualifies, and neither party addresses his application for cancellation nor why it may or may not have a colorable basis. Even if it's a long shot, Mr. Mosha hasn't conceded that he is removable.

This petition nonetheless must be denied for two reasons. First, though the Fifth Amendment generally entitles noncitizens to due process of law in removal proceedings, *Reno v. Flores*, 507 U.S. 292, 306 (1993), before reaching any due process balancing test, whether under *Mathews*, *German Santos*, or any other (that subject that at times has split other circuits), the court must first determine whether Mr. Mosha's continued detention under § 1226(c) pending his appeal requires a new run at a balancing test at all. Put otherwise, the court must first answer the question of whether a § 1226(c) detainee, awaiting a final removal order, can prevail on an as-applied due process challenge to his mandatory detention. The answer is no, at least not here.

The law recognizes the government's authority to detain noncitizens during removal proceedings. As discomforting as it may seem to some, "Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522; *see also Reno*, 507 U.S. at 305-06. Detention is a "constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523; *see also Wong Wing v. United States*, 163 U.S. 228, 235 (1896) (deportation proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character"). Although the detention in *Demore* was relatively shorter, *Demore* never suggested that detention authorized by § 1226(c) might become unconstitutional once it exceeds a particular length of time.

And nothing suggested the courts, notwithstanding Congress's statutory mandate, should engage in an *ad hoc* process of reviewing a noncitizen's detention every whipstitch as he proceeds through ongoing removal proceedings—proceedings aided by review by immigration judges, or the BIA, as to his criminality or danger (or alternatively, his safety), and any rights to an exception to removal. Rather, *Demore* affirmed its "longstanding view that the government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore*, 538 U.S. at 526; *see also Reno*, 507 U.S. at 303 (upholding regulatory scheme that imposed a blanket presumption resulting in minors remaining in custody during their deportation proceedings, as institutional custody of deportable aliens "surely does not violate the Constitution"); *Carlson v. Landon*, 342 U.S. 524, 541-43 (1952) (upholding detention without bond of deportable aliens who were active Communists, as the government could continue to hold detainees "by reference to the legislative scheme"). After all, § 1226(c)'s mandate to detain so-called "criminal aliens" rests

on Congress's findings that they categorically present a higher risk of flight and danger to the community. *Demore*, 538 U.S. at 518-20. Though the dissent in *Demore* advocated for a *Mathews*-type inquiry into the individual custody of each detainee, the majority opted for a bright-line rule instead: the government can detain an alien for as long as deportation proceedings are "pending." *Demore*, 538 U.S. at 527-28 (Rehnquist, J., majority); *see also id.* at 549–58 (Souter, J., concurring and dissenting in part).

Subsequently, *Jennings* rejected an effort to construe § 1226(c) as implicitly requiring periodic bond hearings. The statute "mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Jennings*, 583 U.S. at 305-06. Without reaching the constitutional question posed today, *Jennings* concluded that § 1226(c) could not be interpreted to provide for bond hearings once the alien's detention has become prolonged. *See id.* at 303 ("§ 1226(c) makes clear that detention of aliens within its scope *must* continue pending a decision on whether the alien is to be removed from the United States") (quotations omitted). Indeed, the majority in *Jennings* declined the view, advocated in dissent, that a bail hearing should be required under § 1226(c) when detention grows too long. *Compare id.* at 306-12 (Alito, J.) ("the dissent draws that 6-month limitation out of thin air"), *with id.* at 326-55 (Breyer, J.) (advocating for bail hearing after 6 months). This was much the same debate quieted earlier in *Demore*.

The court distinguishes, as the law does, prolonged detention and indefinite detention. Mr. Mosha cites no binding law that detaining a noncitizen, who has been convicted of a qualifying serious crime and who has been declared by immigration

authorities a danger to the community, would be constitutionally problematic under his precise circumstances while his removal proceedings unwind. Like *Demore* (addressing § 1226(c)), and unlike *Zadvydas* (addressing § 1231(a)(6)), no one can say removal is "no longer practically attainable," that detention "no longer bears a reasonable relation to the purpose for which the individual was committed" (criminality or danger), or that the period of detention will be "indefinite" or "potentially permanent." *Demore*, 538 U.S. at 527-28 (quoting *Zadvydas v. Davis*, 533 U.S. 690-91 (2001)); *see also Cirrus Rojas v. Olson*, 183 F.4th 909, 930 (7th Cir. 2026) (identifying only "[d]etention without sufficient purpose" or "indefinitely prolonged detention" as a threat to due process). Though detention may not serve its conceived immigration purpose when removal is no longer practically attainable, the "detention of deportable criminal aliens *pending their removal proceedings* . . . necessarily serves the purpose of preventing deportable criminal aliens from fleeing [before] or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Demore*, 538 U.S. at 527-28; *see also id.* at 513 (Congress was "justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers"). "Whatever good *Zadvydas* may have introduced to address [] concerns about another statute, that good should not be converted into mischief through the guise of constitutional gloss of this one." *Z.G. v. Olson*, 834 F. Supp.3d 794, 805 (N.D. Ind. 2026).

Mr. Mosha asks the court to recognize a category of cases in which detention remains authorized by § 1226(c) and removal proceedings remain ongoing, but the duration of detention alone triggers a constitutional right to an individualized bond hearing, indeed a

hearing to occur in this court (if not before an immigration judge), and indeed a hearing in which the government, notwithstanding Congress's mandate, now bears the burden, and by clear and convincing evidence at that, to show that the petitioner poses a risk of danger or flight, if not achieves his release outright.

The court declines to do so. Congress has categorically balanced the pertinent concerns already, and constitutionally done so based on the chorus that is *Demore*, *Jennings*, and *Parra*. *See also Nielsen v. Preap*, 586 U.S. 392, 396 (2019) (noncitizens under § 1226(c) "must be detained without a bond hearing until the question of their removal is resolved"); *Cirrus Rojas*, 183 F.4th at 930 (citing § 1226(c) as example of detention that can occur "without bond" and without "an individualized showing that the person might flee or endanger the community"). Neither a precept of due process nor constitutional precedent supplies a judicially administrable time limit on detention under § 1226(c). Nor has the law, from the Supreme Court or Seventh Circuit Court of Appeals, told the court to engage in a case-by-case balancing inquiry anew to determine when constitutionally permissible (and statutorily mandated) detention under § 1226(c) becomes constitutionally impermissible solely by virtue of its length. *See also Banyee*, 115 F.4th at 932 ("nothing suggests that length determines legality"). To the extent that any balancing remains to be done through the guise of due process after Congress's work, *Demore*, *Jennings*, and *Parra* have already done it. As the government argues, detention under § 1226(c) during removal proceedings is constitutional.

Second, even if called to go one step further, the court would have little to add to this particular as-applied challenge to conclude that Mr. Mosha's detention is constitutional

under § 1226(c). The parties (the government only in the alternative) argue the *German Santos* factors when the court has previously declined such a rubric. And it makes little sense in this scenario too. At least once the Supreme Court used *Mathews* to assess due process within the immigration context, *see Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (exclusion hearing for a permanent resident alien); *cf. Hamdi v. Rumsfeld*, 542 U.S. 507, 528-29 (2004) (detention of a citizen classified as an enemy combatant), and our circuit returned to this analysis when addressing § 1226(c) the last time too, *Parra*, 172 F.3d at 958.[4]

"The due process calculus under [*Mathews*] requires the court to evaluate the private interest, the probability of error (and the effect of additional safeguards on the rate of error), and the government's interest in dispensing with those safeguards, with a thumb on the scale in favor of the statute's constitutionality." *Id.* Recalling this is an as-applied challenge, today the "private interest here is not liberty in the abstract, but liberty in the United States by someone no longer entitled to remain in this country." *Id.* The probability of error is demonstrably low when he has effectively conceded his qualifying crime to justify § 1226(c) detention, when an immigration judge has made a finding of his danger (a decision not reviewable by this court), and both an immigration judge and the BIA has affirmed that withholding of removal, based on his serious criminal conviction, would not be appropriate.

[4] Another option might be *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), which tweaks the second *Mathews* factor to ask whether notice was reasonably calculated to apprise interest parties of the action and to give them an opportunity to present objections instead of asking whether additional procedural safeguards might reduce the risk of error. *See, e.g., Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (applying *Mullane* to decide what process was due to aliens facing removal under the Alien Enemies Act); *A.A.R.P. v. Trump*, 605 U.S. 91, 95 (2025) (same); *see also Make the Rd. N.Y. v. Mullin*, 179 F.4th 16, 33 (D.C. Cir. 2026) (choosing *Mullane* over *Mathews*). But *Mullane* would no more favor Mr. Mosha than *Mathews*, for no one suggests in the end he lacked notice or opportunity given all the process afforded to him already.

And the public interest is substantial given the commentary by *Demore* and *Jennings* on the rationale behind mandatory detention, without need of further procedures.

To be sure, Mr. Mosha's detention has been lengthy while his removal proceedings have been ongoing and his appeals decided. Whatever delay has occurred because of the government, or for that matter because of him and his varying requests, nothing in the record establishes the government is acting arbitrarily or that his immigration proceedings are merely a ruse "to incarcerate [him] for other reasons." *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring). In lieu of habeas relief based on due process, Mr. Mosha has other remedies. For one, he "has the keys in his pocket" and can "withdraw his defense of the removal proceeding and return to his native land," thereby "ending his detention immediately." *Parra*, 172 F.3d at 958. Perhaps this might strike as too cold when a petitioner has a legitimate defense, or retains a legitimate concern for his welfare, but one last-ditch effort really only addresses where he might be removed, not whether he can be removed, and the other leaves much to be desired about its prospects. An immigration judge also found him not just ineligible for bond under § 1226(c) but a danger to the community.

For another option, if Mr. Mosha claims he is not subject to mandatory detention because he should not be classified under § 1226(c), he may request a *Joseph* hearing. *See In re Joseph*, 22 I. & N. Dec. 799, 799 (BIA 1999). This hearing is "immediately provided to a detainee who claims that he is not covered by § 1226(c)." *Demore*, 538 U.S. at 514 n.3; *see* 8 C.F.R. § 1003.19(h)(2)(ii) ("[N]othing in this paragraph shall be construed as prohibiting an alien from seeking a determination by an immigration judge that the alien is not properly included within [8 U.S.C. § 1226(c)(1)]"). When an immigration judge "determines the alien

[falls] within § 1226(c), then he is without authority to conduct an individualized bond determination," whereas if a judge "determines the alien does not fall within § 1226(c), then he may consider the question of bond." *Gonzalez*, 355 F.3d at 1013 (citations omitted).

For today, though, if Mr. Mosha remains within § 1226(c) as a "criminal alien" without a final removal order, he is subject to mandatory detention. *See Jennings*, 583 U.S. at 303. As applied here, the Constitution does not require a bond hearing, much less one that imposes a new burden on the government, merely because his immigration proceedings have taken longer than anticipated or hoped.

Separately, Mr. Mosha alleges inadequate medical and mental health care, unsafe and unsanitary conditions, insufficient or spoiled food, and inadequate clothing. These allegations, taken quite seriously by the court, nevertheless do not independently establish an entitlement to habeas relief. Challenges to conditions of confinement ordinarily must be pursued through a separate civil action. *See Robinson v. Sherrod*, 631 F.3d 839, 840-41 (7th Cir. 2011). Mr. Mosha may seek appropriate relief in such an action, including an injunction requiring constitutionally adequate treatment and conditions. The remedy for these alleged deficiencies is to correct them, not to release him from otherwise lawful custody. *See Glaus v. Anderson*, 408 F.3d 382, 386-87 (7th Cir. 2005).

Accordingly, the court DENIES his petition request for habeas corpus relief [1] and DENIES AS MOOT his recent motion to expedite [20].

SO ORDERED.

November 16, 2026

*s/ Damon R. Leichty*
Judge, United States District Court